# United States Court of Appeals
# for the Federal Circuit

_____

**GUST, INC.,**
*Plaintiff-Appellee*

**v.**

**ALPHACAP VENTURES, LLC, RICHARD JUAREZ,**
*Defendants*

**GUTRIDE SAFIER LLP,**
*Movant-Appellant*

_____

2017-2414

_____

Appeal from the United States District Court for the Southern District of New York in Nos. 1:15-cv-06192-DLC, 1:16-cv-01784-DLC, Senior Judge Denise Cote.

_____

Decided: September 28, 2018

_____

FRANK A. BRUNO, White & Williams LLP, Philadelphia, PA, argued for plaintiff-appellee. Also represented by SIOBHAN K. COLE.

DARALYN JEANNINE DURIE, Durie Tangri LLP, San Francisco, CA, argued for movant-appellant.

DANIEL K. NAZER, Electronic Frontier Foundation, San Francisco, CA, for amicus curiae Electronic Frontier

Foundation.

PETER J. BRANN, Brann & Isaacson, Lewiston, ME, for amici curiae Acushnet Company, Garmin International, Inc., Red Hat, Inc., SAP, Inc., SAS Institute, Inc., Symmetry LLC, VIZIO, Inc. Also represented by STACY O. STITHAM, DAVID SWETNAM-BURLAND.

―――――――――――

Before WALLACH, LINN, and HUGHES, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* LINN.

Dissenting opinion filed by *Circuit Judge* WALLACH.

LINN, *Circuit Judge*

Movant Gutride Safier LLP ("Gutride"), a law firm representing AlphaCap Ventures, LLC ("AlphaCap") in the district court litigation here, appeals the award of fees under 28 U.S.C. § 1927, making Gutride jointly and severally liable for all expenses incurred by Gust, Inc. in defending the instant lawsuit, including attorneys' fees and costs. *Gust, Inc. v. AlphaCap Ventures, LLC*, 226 F. Supp. 3d 232 ("*Fees Op.*"); *Gust, Inc. v. AlphaCap Ventures, LLC*, No. 15-cv-06192 (S.D.N.Y. July 6, 2017) ("*Reconsideration Op.*"). Because the district court abused its discretion by awarding fees and costs under 28 U.S.C. § 1927, we reverse.

## I. BACKGROUND

AlphaCap is a non-capitalized non-practicing entity based in California. In January 2015, AlphaCap hired Gutride on a contingency basis, and sued ten internet crowdfunding companies for patent infringement of AlphaCap's U.S. Patents No. 7,848,976 ("'976 patent"); No. 7,908,208 ("'208 patent"); No. 8,433, 630 ("'630 patent") (collectively, "patents at issue") in the Eastern District of Texas. Nine of the defendants settled for less than $50,000 each, leaving only Gust contesting in-

fringement and validity. A timeline of relevant events in the ensuing litigation is as follows:

Timeline of Relevant Events

| June 19, 2014 | Supreme Court issues *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) |
|---|---|
| Jan. 2015 | AlphaCap sues Gust in the Eastern District of Texas |
| June 19 | AlphaCap proposes to dismiss and settle and Gust rejects the offer |
| June 22 | Gust files a motion to transfer under 28 U.S.C. §§ 1404, 1406 |
| June 29 | The Southern District of New York decides *Kickstarter, Inc. v. Fan Funded, LLC*, No. 11-cv-6909, 2015 WL 3947178 (S.D.N.Y. June 29, 2015), *aff'd* 654 F. App'x 481 (Fed. Cir. 2016), applying *Alice* to find certain unrelated claims directed to crowdfunding invalid under § 101 |
| July 2 | Gutride tells Gust's counsel that the case is "not worth litigating," and AlphaCap offers to dismiss its complaint with prejudice as a walk-away settlement; Gust refuses unless Alpha-Cap assigns all patents to Gust |
| July 2 | AlphaCap files a motion for venue discovery; Gust agrees to venue discovery and the district court issues a discovery order<br><br>Venue discovery runs through September 1 |
| July 9 | Gust sends AlphaCap a formal settlement offer, explaining its § 101 invalidity position in view of *Alice*, and proposes that AlphaCap dismiss its complaint with prejudice and either pay Gust's attorneys' fees or assign full owner-ship of all AlphaCap patents to Gust. Under its terms, AlphaCap would keep all prior licensing revenue |
| July 28 | AlphaCap offers walkaway settlement; Gust |

| | refuses |
|---|---|
| August 6 | Gust files for Declaratory Judgment of no infringement, invalidity, abuse of process, tortious interference, and antitrust in the Southern District of New York |
| August 17 | Gust offers to dismiss it's action in the Southern District of New York if AlphaCap dismisses its action with prejudice, pays all of Gust's attorneys' fees—totaling $175,000 up to that point—*and* assigns ownership of all patents to Gust; AlphaCap refuses |
| August 24 | AlphaCap threatens to move for sanctions under Federal Rules of Civil Procedure 11 ("Rule 11") unless Gust dismisses its declaratory judgment action in the Southern District of New York |
| November 6 | AlphaCap moves for sanctions under Rule 11 and moves to dismiss Gust's claims in the Southern District of New York. |
| August 2015 until February 2016 | Claim construction discovery period |
| March 2 | Eastern District of Texas transfers AlphaCap's case to the Southern District of New York |
| May 18 | AlphaCap provides Gust with covenant not to sue on the patents at issue |
| July 28 | The Southern District of New York dismisses both AlphaCap's and Gust's claims |
| August 19 | Gust moves for attorneys' fees under 35 U.S.C. § 285 and 28 U.S.C. § 1927 |
| December 8 | The Southern District of New York awards fees to Gust under § 285 and § 1927 |
| July 6, 2017 | The Southern District of New York denies AlphaCap's motion for reconsideration. |

In its December 8, 2016 decision, the district court first concluded that this case was "exceptional" under § 285. The district court explained that *Alice* "gave AlphaCap clear notice that the AlphaCap Patents could not survive scrutiny under 35 U.S.C. § 101." *Fees Op.*, 226 F. Supp. 3d at 241. The district court concluded that the claims were directed to crowdfunding, a fundamental economic concept and way of organizing human activity, and that this was an abstract idea. *Id.* at 241–44. The district court rejected AlphaCap's argument that the claims were directed to improvements in computer functionality, because the claimed computer components were routine and conventional in the industry. *Fees Op.*, 226 F. Supp. 3d at 243–44 (distinguishing *Enfish LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016)). The district court then found that the claims did not include an inventive concept sufficient to render the abstract ideas patent eligible under *Alice* Step 2. *Id.* at 240.

The district court further concluded that the case was exceptional because: (1) AlphaCap brought the case "to extract a nuisance settlement from Gust," as confirmed by the "paltry settlements" to which AlphaCap agreed with the other nine defendants and AlphaCap's decision to file in the Eastern District of Texas, a venue distant from Gust's Delaware home, *id.* at 245; and (2) an award is necessary to deter AlphaCap's predatory patent enforcement practice, *id.* AlphaCap does not appeal the district court's exceptional case determination or the award of attorney's fees.

This appeal only raises Gutride's joint and several liability for Gust's attorneys' fees under § 1927. The district court concluded that Gutride's litigation conduct justified an award under § 1927 because its actions were unreasonable and taken in bad faith. Specifically, the district court focused on Gutride's unwillingness to settle pursuant to Gust's terms despite knowing that *Alice* doomed the claims and stating that the case was "not

worth litigating" and resisting Gust's motion to transfer out of the Eastern District of Texas. The court awarded all expenses incurred by Gust in the amount of $492,420 in fees and $15,923 in costs, jointly and severally against AlphaCap and Gutride. The district court also awarded prejudgment interest at a New York State rate of 9%. *Id.* at 254.

On reconsideration, the district court noted that "Fees under Section 1927 were not awarded based on the filing of the litigation." *Reconsideration Op.* at 16. But, the district court explained that the filing of what it considered to be frivolous litigation was nevertheless "not irrelevant to the decision to impose fees," because it "supported [the district court's earlier] finding that counsel acted in bad faith when it unreasonably and vexatiously multiplied the proceedings." *Id.* The district court also rejected Gutride's argument that AlphaCap, as the client, was responsible for the delay in issuing a covenant not to sue to Gust, rather than Gutride, but did not directly address the role of the client and the counsel in creating delay due to the failure to issue a covenant not to sue.

Gutride, as movant, timely appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II. STANDARD OF REVIEW

We review § 1927 awards under the law of the regional circuit. *Phonometrics, Inc. v. Westin Hotel Co.*, 350 F.3d 1242, 1246 (Fed. Cir. 2003). The Second Circuit reviews the imposition of sanctions for an abuse of discretion. *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 113 (2d Cir. 2009). When a district court acts as "accuser, fact finder and sentencing judge all in one, [the Second Circuit reviews under a] more exacting [standard] than under the ordinary abuse-of-discretion standard." *Id.* at 113–14 (internal quotes and citation omitted). This more exacting standard requires the appeals court to "ensure that any such [award] is made with restraint and

discretion" by requiring "sufficiently specific factual findings" to avoid conclusory determinations by the district court. *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000) (internal quotes and citation omitted). Just as when a district court imposes sanctions under Rule 11, "the court is to avoid hindsight and resolve all doubts in favor" of the non-movant. *See Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986).

### III. 28 U.S.C. § 1927

Section 1927 of Title 28 allows a district court to award fees directly against a party's attorney under certain circumstances.

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

In the Second Circuit, an award under § 1927 requires: (1) that claims were "entirely without color," and (2) "were brought in bad faith—that is, motivated by improper purposes such as harassment or delay." *Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 833 (Fed. Cir. 2010) (citing *Eisemann*, 204 F.3d at 396). The relevant "claims" are the attorney actions deemed motivated by improper purposes. *See Oliveri*, 803 F.2d at 1273 ("[A]n award under § 1927 is proper when the attorney's *actions* are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.") (emphasis added).

Both elements must be met before a district court may make an award under § 1927. Moreover, both determinations require a district court to provide "a high degree of

specificity in the factual findings." *Dow Chem. Pac. Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 344 (2d Cir. 1986).

### A. The "Color" of AlphaCap's Claims

The district court held that Gutride's continued contention that AlphaCap's claims were patent-eligible lacked color. *Fees Op.*, 226 F. Supp. 3d at 251; *id.* at 241–45 (concluding that AlphaCap's position on § 101 was objectively unreasonable in the context of 35 U.S.C. § 285). The district court based its fee award in part on the baselessness of AlphaCap's position in filing this suit, *id.* at 248 ("Realizing that they could not defend the Alpha-Cap Patents against a § 101 validity challenge, they chose nonetheless to file this contingency-fee lawsuit."), and on Gutride's insistence on continuing the litigation.

Gutride first argues that the district court erred by supporting its fee award under § 1927 with the baselessness of AlphaCap *bringing* its complaint, which, it contends, is only an appropriate consideration under Rule 11. Gutride also argues that AlphaCap's position that the patents at issue are not invalid under § 101 were colorable within the unsettled state of the law following the decision in *Alice*. Gust responds that the district court properly considered the baselessness of AlphaCap's claims in support of its determination that AlphaCap and Gust continued the litigation in bad faith, *see Reconsideration Op.* at 16, and that one of the requirements of a § 1927 award—that "the offending party's claims were entirely without color," *Eisemann*, 204 F.3d at 396—requires consideration of the baselessness of the offending party's claims. Gust also argues that the § 101 law post-*Alice* was settled, because all cases dealing with abstract ideas in patents cited the two-step *Alice* framework. Finally, Gust argues that the claims here were not even questionably patent eligible.

We agree with Gutride that neither the filing of this case nor Gutride's continuation of the litigation support a § 1927 award.

On its face, § 1927 only applies to actions that result in unreasonable and vexatious *multiplication* of proceedings. This necessarily excludes a *filing* of a baseless complaint, which is properly analyzed under Fed. R. Civ. P. 11. *Jensen v. Phillips Screw Co.*, 546 F.3d 59, 65 (1st Cir. 2008) ("[A]n unbroken band of cases across the courts of appeals hold[s] that a lawyer cannot violate section 1927 in the course of commencing an action," and therefore holding that the failure to vet or investigate a claim cannot give rise to a § 1927 sanction); *Zuk v. E. Pa. Psychiatric Inst.*, 103 F.3d 294, 297 (3d Cir. 1996) (holding that § 1927 award is unavailable for failing to adequately investigate the facts and law prior to filing a complaint); *DeBauche v. Trani*, 191 F.3d 499, 511 (4th Cir. 1999). Although the Second Circuit has not stated this explicitly, it has stated that the primary purpose of § 1927 is "to deter unnecessary *delays* in litigation." *Oliveri*, 803 F.2d at 1273 (emphasis added) (quoting H.R.Conf. Rep. No. 1234, 96th Cong., 2d Sess. 8, *reprinted in* 1980 U.S. Code Cong. & Ad. News, 2716, 2782). Coupled with the clear language of § 1927, we conclude that the Second Circuit would join the "unbroken band of cases" excluding baseless filing of a complaint from supporting an award under § 1927.

We also agree with Gutride that AlphaCap's position on patent eligibility was colorable, particularly given the relative paucity of § 101 cases that were decided by this court between *Alice* and AlphaCap's complaint in Texas. "[A] claim is entirely without color when it lacks *any* legal or factual basis." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 337 (2d Cir.1999) (internal quotation marks omitted). When the applicable law is unsettled, attorneys may not be sanctioned merely for making reasonable arguments for interpreting the law. *Secs.*

*Indus. Ass'n v. Clarke*, 898 F.2d 318, 321–22 (2d Cir. 1990), *abrogated on other grounds recognized by Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir. 1990). This is just another way of saying that the domain of colorable arguments is broader when the law is unsettled.

During the pendency of this litigation, the abstract idea law was unsettled. AlphaCap filed suit in January of 2015, just seven months after the Supreme Court decided *Alice*. Between *Alice* and AlphaCap's complaint in Texas, this court in a majority opinion cited *Alice* only seven times. Several of those cases recognized the uncertainty in the application of *Alice*. *See Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) ("The Supreme Court has not 'delimit[ed] the precise contours of the 'abstract ideas' category.'"); *DDR Holdings*, 773 F.3d at 1256 (same); *id.* at 1255 ("Distinguishing between claims that recite a patent-eligible invention and claims that add too little to a patent-ineligible abstract concept can be difficult, as the line separating the two is not always clear.").

Moreover, Gust is simply incorrect that because all abstract idea cases after *Alice* applied the two-step *Alice/Mayo* framework, patent eligibility after *Alice* was settled. In view of the evolving nature of § 101 jurisprudence during the merits stage of this lawsuit, it is particularly important to allow attorneys the latitude necessary to challenge and thus solidify the legal rules without the chill of direct economic sanctions. *See In re Pennie & Edmonds LLP*, 323 F.3d 86, 90–91 (2d Cir. 2003) ("If the sanction regime [on lawyers] is too severe, lawyers will sometimes be deterred from making legitimate submissions on behalf of clients out of apprehension that their conduct will erroneously be deemed improper.").

The claims here when filed were not within the narrow universe of sanctionable arguments under § 1927, and we agree with Gutride that the district court abused

its discretion in concluding that "the AlphaCap Patents do not fall in that interstitial area where doubt may reasonably exist" about their eligibility. *Reconsideration Op.* at 11 n.3. First, the eligibility of the claims at issue is not precluded simply because they are directed to software based business methods. Our case law recognizes that there is no bright line exclusion of software patents or business method patents from patent eligibility. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) ("[W]e do not purport to state that all claims in all software-based patents will necessarily be directed to an abstract idea."); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1354 (Fed. Cir. 2014) (recognizing that *Bilski v. Kappos*, 561 U.S. 593, 611 (2010) did not create a general business method exception for patent eligibility).

Gutride argues that the claims require a data collection template using a semi-homogenous profile, and that this at least colorably supported patent eligibility throughout the pendency of the litigation. Gutride focuses on the independent claims in the '208 patent to support its colorable eligibility argument. Claim 1 of the '208 patent claims "A method for managing resource consumer information," comprising: "defining, by at least one processor, a data collection template of fields for a semi-homogenous profile desired by a resource provider," "customizing the template in real time," "maintaining an electronic database system by a trusted third party who is neutral," storing certain information, and allowing the creation of distinct portfolio records for different types of portfolios. '208 patent, col. 25, ll.5–39. Gutride analogizes this claim to the claims found patent eligible in *DDR Holdings*.

The invention in *DDR Holdings* allowed a host merchant website to maintain the look and feel of the host website when hyperlinking to outside merchants' product pages. *DDR Holdings*, 773 F.3d at 1257–58. We held the claims to be patent eligible because they "do [not] recite a

commonplace business method aimed at processing business information, applying a known business process to the particular technological environment of the Internet, or creating or altering contractual relations using generic computer functions and conventional network operations." *Id.* at 1259. This court distinguished *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014) because the claims in *DDR Holdings* did not "broadly and generically claim 'use of the Internet' to perform an abstract business practice (with insignificant added activity)," but rather "specify how interactions with the Internet are manipulated to yield a desired result—a result that overrides the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink." *DDR Holdings*, 773 F.3d at 1258.

Gutride argues that both the invention at issue here and that of *DDR Holdings* use semi-homogenous structures to balance users' needs for individualized ads (in *DDR Holdings*) or loan requirements (here) against the efficiency of a single form document. We find this argument somewhat dubious because the basis for *DDR Holdings* was not semi-homogeneity itself, but the maintenance of the look and feel of internet hyperlinks. Our task here, however, is to determine whether Gutride, in the nearly immediate aftermath of *Alice*, vexatiously and unreasonably multiplied the proceedings in this litigation by continuing a litigation premised on arguments lacking *any* color. Gutride's arguments for patent eligibility were not so lacking in color to support such a conclusion.

Gust argues that the Southern District of New York's conclusion in *Kickstarter*, No. 11-cv-6909, 2015 WL 3947178, that claims directed to internet crowdfunding were ineligible, supports the district court's conclusion that AlphaCap's position lacked color. This argument is inapposite. First, the claims found ineligible in *Kickstarter* were in patents unrelated to those at issue here.

Second, much of the confusion in abstract idea law after *Alice* is in the proper categorization of what a claim is directed to. The district court in *Kickstarter* categorized the claims as directed to "crowd-funding" or similar concepts. *Id.* at *11. The patents at issue here do not discuss crowdfunding, and the district court did not compare the claims here to those at issue in *Kickstarter*.

The district court's conclusion that Gutride's patent eligibility position lacked color was built on improper hindsight as to the state of the law and a conclusory analysis of the claims at issue. Under the exacting standard of review applicable in this § 1927 case, we conclude that the district court abused its discretion by holding that Gutride's position with respect to patent eligibility lacked color.

## B. Bad Faith

The district court also abused its discretion by concluding that Gutride's actions throughout the litigation constituted bad faith. The district court reached its conclusion based on the following: (1) The circumstances around AlphaCap's bringing of the suit—that Gutride knew that AlphaCap's patents were not patent eligible after *Alice*, and initiated the litigation anyway to extract a nuisance settlement; (2) Gutride's decision to litigate in the Eastern District of Texas and frivolously oppose transfer to the clearly more convenient Southern District of New York, including moving for venue discovery and filing a sur-reply in opposition to Gust's motion to transfer; and (3) Gutride's failure to end the case through settlement, dismissal, or a covenant not to sue. Gutride argues that the district court abused its discretion on all of these grounds. We agree and address each, in turn.

1

As the district court explained on reconsideration, the circumstances surrounding the filing of the frivolous

litigation, "drove or colored virtually every decision counsel made during the litigation," *Reconsideration Op.* at 16. These circumstances were that Gutride knew that AlphaCap's patents were not patent eligible after *Alice* and "AlphaCap's goal was to extract a nuisance settlement from Gust." *Fees Op.*, 226 F. Supp. 3d at 241.

a

First, the district court relied on three bases to support its contention that Gutride knew that AlphaCap's patents were not valid: (1) the district court's statement in its opinion granting Gust's motion to dismiss, that AlphaCap knew the patents were invalid, *Fees Op.*, 226 F. Supp. 3d at 239–40 (*citing Gust, Inc. v. AlphaCap Ventures, LLC*, 2016 WL 4098533, at \*2 (S.D.N.Y. July 28, 2016) ("*Gust I*")); (2) Gutride's statement to Gust's counsel that the case was "not worth litigating," *id.* at 238–39, 248, 253 (relying on Gutride attorney Safier's July 2 statement to Gust's counsel that the case was "not worth litigating"); and (3) the frivolousness of AlphaCap's position on § 101, *id.* at 248 ("AlphaCap's attorneys were well aware of *Alice* and its implications for the AlphaCap patents."). The statement in *Gust I*, however, was *not* a factual finding—it was a description of *Gust's* position in opposition to AlphaCap's motion to dismiss Gust's tort claims. *Gust I*, 2016 WL 4098533, at \*1 ("The following facts are drawn from the pleadings and the documents attached thereto. The facts are construed in favor of Gust."). This is an improper basis to support a conclusion about Gutride's bad faith.

The district court also improperly relied on Safier's statement that the case is "not worth litigating" as evidence of Gutride's knowledge that AlphaCap's patents were invalid. In the context of advocating for settlement with the opposing party to settle, this is an inoffensive assertion that the calculus favors settlement, not an admission that the patents were invalid. *See Q-Pharma,*

*Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1304 (Fed. Cir. 2004) (holding that the statement that "further pursuit of the lawsuit would not have been worth the investment" was not evidence of bad faith).

As discussed in Section III.A., *supra*, AlphaCap's position that its claims were not invalid did not lack color. Bad faith may be inferred from attorney action *only* "if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Adv. Magnetic Closures*, 607 F.3d at 834 (citing *Schlaifer Nance & Co.*, 194 F.3d at 336. Gutride's eligibility arguments here do not meet this standard.

The district court thus had no basis to find that Gutride knew that the patents were invalid after *Alice,* and it therefore erred in relying on this finding to support its bad faith determination.

b

The district court also supported its bad faith determination by noting that AlphaCap filed this lawsuit "as one of ten," "in the expectation that they could obtain quick settlements of relatively modest amounts from every major firm in the internet crowdfunding arena." *Fees Op.*, 226 F. Supp. 3d at 248.

We appreciate the district court's concern with AlphaCap's business/litigation model here. As a non-capitalized, non-practicing entity, represented on a contingency fee basis, AlphaCap bears relatively little risk and cost in filing its infringement actions, as compared with the relatively high costs incurred by defendants to defend the lawsuit. By suing multiple defendants and encouraging quick settlements at values far below the cost of defending an infringement action on the merits, AlphaCap was able to obtain not insignificant revenues without having to test the merits of its position. Moreo-

ver, because it is non-capitalized, AlphaCap is not subject to the deterrent effect of § 285. As this court has previously recognized in the § 285 context, non-practicing entities can extract settlements from a large number of accused infringers owing to the potential for "disproportionate discovery costs" and assume little business risk. *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327–28 (Fed. Cir. 2011). We warned that "the appetite for licensing revenue cannot overpower a litigant's and its counsel's obligation to file cases reasonably based in law and fact and to litigate those cases in good faith." *Id.* at 1328.

Nevertheless, § 1927 is not the proper vehicle to generally address those concerns. As discussed above, *supra* at 10, Rule 11, with its procedural safeguards, already addresses attorneys' complicity in the filing of frivolous and improper litigation. Moreover, the heart of the district court's concern is with AlphaCap, not its attorneys. As discussed below in connection with the decision *not* to settle or offer a covenant not to sue, *infra* at 20, decisions within the client's domain are generally not attributable to its attorneys. It is the client's decision whether to capitalize its business, to acquire the patents, to decide whether to practice the patents, whether and who to sue, and whether and when to agree to low value settlements. Such client decision-making is a poor evidentiary basis on which to infer *attorney* bad faith in multiplying proceedings.[1]

---

[1] We note that in the context of contingency fee arrangements, attorneys have more interest—and presumably somewhat more say—in these decisions than under other attorney-client fee arrangements. Gust has not, however, proffered any evidence that Gutride had control over such decisions.

2

Gutride's opposition to transfer also does not support a conclusion of bad faith. According to the district court, Gutride's position that New York was not clearly more convenient was frivolous, because Gust never resided in the Eastern District of Texas, Gust's only regular and established place of business was in New York, the allegedly infringing website was developed and hosted in New York, and the website is administered by Gust's New York employees. The district court explained that "AlphaCap could not identify a single piece of evidence located in or near the Eastern District of Texas." *Fees Op.*, 226 F. Supp. 3d at 250.

Gutride asserts that it filed in Texas and opposed the motion to transfer because of the Eastern District of Texas's faster-moving docket, the experience of its attorney in that forum, and the central location of Texas with respect to relevant evidence between the East and West coasts. Gutride argues that: (1) an attorney only has an obligation to file in a *proper* forum, not in the most convenient forum, *see Sussman v. Bank of Israel*, 56 F.3d 450, 457 (2d Cir. 1995); (2) Gust *agreed* to venue discovery, and that Gutride may not be sanctioned for multiplying the proceedings by engaging in conduct voluntarily undertaken by Gust and ordered by the district court, *see* J. App'x at 2192–93; and (3) its position on convenience was allowed under then-current law, and unlike *In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009), highlighted by the district court, at least some third-party users were found to reside in the Eastern District of Texas.

We agree with Gutride. First, under then-current law, the Eastern District of Texas was a proper forum because Gust was indisputably subject to personal jurisdiction in Texas. *See VE Holdings Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574 (Fed. Cir. 1990), *abrogated by TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,

137 S. Ct. 1514 (2017). Indeed, Gust dropped 28 U.S.C. § 1406 as a basis to support its transfer motion and limited its argument to forum non conveniens under 28 U.S.C. § 1404. As the Second Circuit held in *Sussman*, and not disputed by Gust, an attorney need not bring a case in the most convenient forum, but only a proper forum. Filing and attempting to keep the case in Texas was not, therefore, on its own, evidence of bad faith arguments. We also agree that Gutride cannot be sanctioned for engaging in venue discovery to which Gust agreed and the district court approved.

Finally, we agree with Gutride that its arguments that New York was not clearly a more convenient forum were not "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Adv. Magnetic Closures*, 607 F.3d at 834 (citing *Schlaifer Nance & Co.*, 194 F.3d at 336). The convenience analysis is a multi-factor balancing test of public and private factors, not a bright line rule that Gutride tried to circumvent. When the Eastern District of Texas analyzed the factors, it found that *a majority* of the factors supported transfer, but not that all of them did.

The district court concluded that Gutride's position that Texas was more centrally located than New York—between AlphaCap's California headquarters and Gust's headquarters in New York (or Gust's development center in Vancouver)—necessarily conflicted with *Genentech*. Gutride correctly points out, however, that, unlike *Genentech*, at least some witnesses here—end users of Gust's website—were located in the Eastern District of Texas. J. App'x at 4072–73 (Gutride's representation of end user witnesses present in the Eastern District of Texas). *See also Personalweb Techs., LLC v. Yahoo!, Inc.*, No. 6:12-cv-658, 2014 WL 1689046, at *6 (E.D. Tex. Feb. 12, 2014) (end-users considered in venue analysis after *Genentech*). *Genentech* is not as clear-cut against considering the

centrality of a forum's location as the district court assumed—indeed, *Genentech* itself distinguished a case in which centrality could be considered where "a substantial number of witnesses" were residents of the plaintiff's chosen venue. *See Genentech*, 566 F.3d at 1344 (quoting and distinguishing *United States v. Binder*, 794 F.2d 1195, 1200 (7th Cir. 1986)); *id.* (explaining that because no witnesses were resident in Texas, "the district court improperly used its central location as a consideration in the absence of witnesses within the plaintiff's choice of venue"). The district court clearly erred in concluding that "AlphaCap failed to identify a single witness located in the Eastern District of Texas." *Fees Op.*, 226 F. Supp. 3d at 250.

3

Finally, we also agree with Gutride that AlphaCap's decision not to grant a covenant not to sue until May 18, 2016 is not evidence of Gutride's bad faith. The decision to settle or grant a covenant not to sue is wholly committed to clients, not their attorneys. *See United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 986 F.2d 15, 19 (2d Cir. 1993) ("The Supreme Court recognized long ago that the decision to settle a case rests with the client alone.") (citing *United States v. Beebe*, 180 U.S. 343, 350–53 (1901)). AlphaCap's decision not to issue the covenant earlier is not *attorney* multiplication of proceedings. Moreover, as discussed, *supra*, AlphaCap's position on patent eligibility did not lack color, and at least for that reason, the inference from AlphaCap's failure to resolve the case earlier to bad faith is lacking. For similar reasons, we reject the district court's consideration of AlphaCap's other low-value settlements to support its bad faith determination. Like the decision not to settle, the decision of what cases to settle and the terms of such settlements are matters within the discretion of the client.

IV

We therefore conclude that the district court abused its discretion under the more exacting review required by the Second Circuit in finding that Gutride unreasonably and vexatiously multiplied the proceedings by making arguments on patent eligibility and venue, and failing to resolve the litigation earlier than it did. We therefore reverse the district court's award of fees under § 1927 against Gutride.[2]

**REVERSED**

COSTS

No costs.

---

[2]   Because of our disposition above, we do not consider whether Gust's failure to file Rule 11 or Rule 12 motions should have foreclosed or limited any award under § 1927. We also do not consider Gutride's challenge to the amount of the award, the propriety of pre-judgment interest, or the appropriate rate to apply when calculating such interest.

# United States Court of Appeals
# for the Federal Circuit

---

**GUST, INC.,**

*Plaintiff-Appellee*

**v.**

**ALPHACAP VENTURES, LLC, RICHARD JUAREZ,**

*Defendants*

**GUTRIDE SAFIER LLP,**

*Movant-Appellant*

---

2017-2414

---

Appeal from the United States District Court for the Southern District of New York in Nos. 1:15-cv-06192-DLC, 1:16-cv-01784-DLC, Senior Judge Denise Cote.

---

WALLACH, *Circuit Judge,* dissenting.

I disagree with the majority's decision to reverse the U.S. District Court for the Southern District of New York ("District Court")'s award of attorney fees pursuant to 28 U.S.C. § 1927 (2012).[1] The Second Circuit reviews a

---

[1] Section 1927 provides that "[a]ny attorney" who "so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy

district court's award of § 1927 sanctions "for [an] abuse of discretion." *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143 (2d Cir. 2012).[2]  A district court abuses its discretion *only* when it bases its sanctions on "an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id*. (citation omitted).  The Supreme Court has cautioned that finding that a district court has abused its discretion is a high bar that an appellant must clear. *See Cooter & Gell v. Hartmarx Corp*., 496 U.S. 384 (1990).  By reversing the District Court's evidentiary findings on the clear evidence supporting counsel's lack of colorable claims and bad faith in bringing these claims, as is required in the Second Circuit, the majority contravenes this precedent and improperly substitutes its own findings for that of the District Court.  On the record before us, I cannot say that any of the District Court's findings were based on an erroneous assessment of the law or evidence.  Therefore, because I would affirm the District Court's award of § 1927 fees, I respectfully dissent.

DISCUSSION

Appellant AlphaCap Ventures, LLC ("AlphaCap") and Appellee Gust, Inc. ("Gust") litigated this matter across

---

personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

[2]    The majority states that the Second Circuit's "more exacting" abuse of discretion standard applies, rather than "the ordinary abuse-of-discretion standard," Maj. Op. 6 (quoting *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 113–14 (2d Cir. 2009)); requiring, even under this more exacting standard "sufficiently specific factual findings," *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000), the District Court based its sanctions determination on sufficiently specific factual findings, for the reasons stated *infra*.

two jurisdictions over the course of a year and a half. AlphaCap sued Gust for patent infringement, along with bringing separate infringement actions against nine other entities, in the Eastern District of Texas ("Eastern District"). J.A. 55. Following a transfer to the District Court, AlphaCap's complaint was consolidated with a declaratory judgment action filed by Gust. J.A. 61; *see also* J.A. 458, 555. After AlphaCap filed its covenant not to sue, the District Court granted AlphaCap's motions to dismiss, *see Gust, Inc. v. AlphaCap Ventures, LLC* (*Gust I*), No. 1:15-cv-6192 (DLC), 2016 WL 4098544, at *6 (S.D.N.Y. July 28, 2016), and the District Court determined that "Gust bore [and met] the burden of proving that the case was exceptional and that § 1927 authorized the award of fees jointly against AlphaCap's counsel [Gutride Safier LLP ('Gutride')]," *Gust, Inc. v. AlphaCap Ventures, LLC* (*Gust II*), 226 F. Supp. 3d 232, 254 (S.D.N.Y. 2016). In reaching this conclusion, the District Court analyzed and relied upon Gust's evidence outlining "the history of this litigation," "why [U.S. Patent Nos. 7,848,976, 7,908,208, and 8,433,630 (collectively, 'the Patents-in-Suit')] were patent ineligible under the *Alice* [*Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014)] standard," and "why AlphaCap's litigation strategy was unreasonable at every stage of the litigation." *See Gust II,* 226 F. Supp. 3d at 252–54. I agree and would affirm the District Court's findings in full.

In the Second Circuit, an award under § 1927 requires: (1) that claims were "entirely without color," and (2) "were brought in bad faith—that is, motivated by improper purposes such as harassment or delay." *Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 833 (Fed. Cir. 2010) (citing *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000) (per curiam)). As stated above, the Second Circuit reviews a district court's award of § 1927 sanctions "for an abuse of discretion." *Enmon*, 675 F.3d at 143.

## I. The District Court Did Not Abuse Its Discretion in Finding Lack of A Colorable Claim

The District Court aptly found AlphaCap's lawsuit against Gust to be "frivolous," "objectively baseless," and its claims without color such "that no litigant could have a reasonable expectation of success on the merits." *Gust II,* 226 F. Supp. 3d at 241. The District Court performed a § 101 analysis under *Alice* and found the Patents-in-Suit "are directed to the patent-ineligible abstract idea of crowdfunding, and do not contain an inventive concept sufficient to transform the abstract idea of crowdfunding into a patent-eligible application." *Id.* at 244–45.

The Supreme Court's decision in *Alice* provides the framework with which we have consistently assessed patent eligibility under § 101 since its rendering. *See* 134 S. Ct. at 2354–55. Under this framework, the District Court properly determined Gutride lacked a colorable basis in asserting the Patents-in-Suit, given the strength of Gust's § 101 ineligibility claim. First, the District Court did not abuse its discretion in holding that Alpha-Cap and Gutride's argument—that it was reasonable to believe that the Patents-in-Suit are not directed to an abstract idea—lacks color. *Gust II*, 226 F. Supp. 3d at 241–43. The Patents-in-Suit generally relate to "data collection templates" in the context of "private equity and debt funding operations." '976 patent, Abstract. Representative claim 1 of the '976 patent recites the method of "managing resource consumer information" for "collect[ing] resource consumer information" by the steps of "a system of one or more machines," "the system providing to at least one user . . . a telephone . . . within a user interface in which the user may input information into the user fields," "defin[ing] a data collection," and "storing the information as a . . . profile . . . in an electronic database system," and allowing "at least one authorized party . . . to access information stored in the system." *Id.* col. 30 ll. 26–62. We have repeatedly observed that claims

similar to those here directed to data organization and use of customizable profiles to facilitate patronage, even when applied in a new business practice like crowdfunding, are abstract ideas. *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1345, 1347 (Fed. Cir. 2014) (finding patent directed to "software on an automated teller machine (ATM) that recognizes information written on a scanned check . . . [and] stor[es] information . . . into memory" to be abstract because "[t]he concept of data *collection*, recognition, and *storage* is undisputedly well-known" (emphases added)); *buySAFE, Inc. v. Google, Inc.,* 765 F.3d 1350, 1355 (Fed. Cir. 2014) (finding a patent directed to creating a "transaction performance guaranty" for a commercial transaction on computer networks such as the Internet to be abstract and stating that sending information over network is "not even arguably inventive"). The District Court cited and compared the Asserted Claims to many of these same cases related to fundamental economic and conventional business practices, *Gust II*, 226 F. Supp. 3d at 241–42, and there is no example of our court endorsing the patent-eligibility of similar claims to justify the majority's assertion that our "§ 101 jurisprudence" during the pendency of this litigation was "evolving," Maj. Op. 10; *see, e.g., Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1318, 1324 (Fed. Cir. 2016) (finding patent directed to the idea of "anonymous loan shopping" and claiming "a method for a borrower to evaluate and/or obtain financing" to be abstract). The Asserted Claims merely recite a series of steps for storing and organizing investment data that could all be performed by humans without a computer, and Gutride's attempt to assert otherwise was frivolous given that the abstract idea here is not meaningfully different from the ideas found to be abstract in other cases before the Supreme Court and our court involving methods of organizing human activity.

Second, the District Court did not abuse its discretion by rejecting Gutride's claim that the Patents-in-Suit contain an inventive concept sufficient to transform the abstract idea into a patent-eligible application. *Gust II*, 226 F. Supp. 3d at 244. Here, claim 1 utilizes conventional and generic items, including a "processing input"; a device such as a "computer," "telephone," or "personal digital assistant"; and "an electronic database." '976 patent col. 30 ll. 45, 46, 50, 51. When claims like these are "directed to an abstract idea" and "merely requir[e] generic computer implementation," they "do[] not move into [§] 101 eligibility territory." *buySAFE,* 765 F.3d at 1354 (internal quotation marks and citation omitted); *see Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015) (finding claims directed to the abstract idea of "tracking financial transactions to determine whether they exceed a pre-set spending limit (i.e., budgeting)" did not "provide a sufficient inventive concept" despite "claiming the improved speed or efficiency inherent with applying the abstract idea on a computer"). According to AlphaCap's proposed claim construction, a "template" is "[a] set of data that serves as a pattern" for data collection, J.A. 2442, which means that in the context of the claims, *see, e.g.*, '976 patent col. 30 l. 39–40, a "data collection template" is no more than a group of fields that specify the kinds of data that will be collected about different objects, such as investors or investment targets. Yet, data management has been a function of computers for as long as computers have existed and will not transform an abstract concept into a patentable invention. *See, e.g., Alice*, 134 S. Ct. at 2359. Gutride maintains its position on appeal that claim terms such as "data collection template" and "webpage" constitute a work-around of clearly generic computer implementation, Appellant's Br. 30, which continues to be a beyond meritless and unreasonable view in the face of *Alice*.

Moreover, I find no error in the District Court's comparison of the Asserted Claims to those of *Capital One Bank*. The appellant in *Capital One Bank* admitted that budgeting "undoubtedly . . . is an abstract idea," and the court held that claims reciting use of a "communication medium" did not render said claims inventive. 792 F.3d at 1368. The District Court correctly pointed out that Supreme Court precedent in *Bilski v. Kappos* further supports a finding of ineligibility because "limiting an abstract idea to one field of use or adding token postsolution components [does] not make the concept patentable." *Gust II*, 226 F. Supp. 3d at 244 (quoting 561 U.S. 593, 612 (2010)). Therefore, I agree that here, the implementing of economic arrangements using generic computer technology clearly does not constitute an "inventive concept" sufficient to render an otherwise abstract idea patent-eligible. The Patents-in-Suit clearly do not fall in that interstitial area where doubt may reasonably exist. *See Gust, Inc. v. AlphaCap Ventures, LLC* (*Gust III*), No. 1:15-cv-6192 (DLC), 2017 WL 2875642, at *4 n.3 (S.D.N.Y. July 6, 2017). Accordingly, the District Court did not abuse its discretion in finding AlphaCap, through its counsel Gutride, had no reasonable expectation of success on the merits in the patent infringement lawsuit it litigated through 2016 against Gust.

I strongly disagree with the majority's acceptance of Gutride's contention on appeal that "the law on patent eligibility was unsettled" and thus "Gutride . . . had good faith arguments that the claims were eligible under [§] 101." Appellant's Br. 22. Nothing about the law of § 101 was sufficiently unsettled at that time so to deem Gutride's arguments "reasonable arguments for interpreting the law." Maj. Op. 9. We applied the *Alice* test in a dozen § 101 panel opinions that issued from the time the Supreme Court issued *Alice* in June 2014 through the

course of this litigation until AlphaCap stopped pursuing their claims against Gust in May 2016.[3] Despite Alpha-Cap and Gutride's general arguments about unsettled § 101 jurisprudence, "there is no uncertainty or difficulty in applying the principles set out in *Alice* to reach the conclusion that [the '976 patent's] claims are ineligible." *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1379 (Fed. Cir. 2017); *see id.* at 1377–80 (reviewing attorney fees stemming from a district court's

---

[3]    *See In re Brown*, 645 F. App'x 1014, 1015 (Fed. Cir. 2016); *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1374 (Fed. Cir. 2016); *In re Smith*, 815 F.3d 816, 818 (Fed. Cir. 2016); *Mortg. Grader, Inc.*, 811 F.3d at 1322; *Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA, LLC*, 635 F. App'x 914, 917 (Fed. Cir. 2015); *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1331 (Fed. Cir. 2015); *Capital One Bank*, 792 F.3d at 1367; *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015); *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1375 (Fed. Cir. 2015); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015); *Allvoice Dev. US, LLC v. Microsoft Corp.*, 612 F. App'x 1009, 1017 (Fed. Cir. 2015); *Content Extraction*, 776 F.3d at 1346–48; *In re BRCA1- & BRCA2-Based Hereditary Cancer Test Patent Litig.*, 774 F.3d 755, 763 (Fed. Cir. 2014); *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1255 (Fed. Cir. 2014); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 713 (Fed. Cir. 2014); *buySAFE* , 765 F.3d at 1351; *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1006 (Fed. Cir. 2014); *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1350 (Fed. Cir. 2014).

2015 decision granting of an appellee's § 101 motion and agreeing that the case was weak).[4]

The majority instead ignores this precedent, focusing on the "only seven [majority opinions]" filed in the seven months between *Alice* and the filing of this litigation. Maj. Op. 10. This improperly narrows the window through which we view counsel's (lack of) a colorable basis to continue litigation for over a year and a half. Indeed, the majority recognizes that, under § 1927, the proper inquiry is whether a party engaged in the "unreasonable and vexatious *multiplication* of proceedings," Maj. Op. 9, and in the context of assessing attorney fees, it is therefore necessary to judge whether Gutride as counsel here multiplied proceedings by examining how a party's understanding of the colorableness of its claim may develop as the law does, *see United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1346 (2d Cir. 1991) (stating that § 1927 "invites attention to a course of conduct, and imposes a continuing obligation on attorneys to avoid dilatory tactics"); *cf. Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013) ("[A] party cannot assert baseless infringement claims and must continually assess the soundness of pending infringement claims[.]"); *Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 954 (Fed. Cir. 2010) (providing, in the § 285 context, "[t]he salient inquiry is whether [plaintiff's] claims were so lacking in merit that [the plaintiff] was legally obligated either to abandon its case altogether or to limit itself to challenging the district court's claim construction order on appeal").

---

[4] To be clear, even if one were to concede the existence of some unsettled issues regarding patent eligibility in the immediate post-*Alice* world, that would not render colorable either claims or arguments regarding eligibility.

Moreover, Gutride's contention on appeal that it "had reasonable grounds to" rely upon our precedent in *BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016), and *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288 (Fed. Cir. 2016), is incredible. Appellant's Br. 34. The majority ignores this point, which, if anything, sheds light on Gutride's eleventh-hour attempts to defend their baseless litigation. While it is true that *BASCOM* and *Amdocs* in particular upheld the validity of patents accused of ineligibility due to § 101, we did not decide *BASCOM* and *Amdocs* until after AlphaCap granted the Covenant Not to Sue in May 2016, which is what ended the litigation. Thus, Gutride could not have had "reasonable grounds" to rely upon those cases.

In *Inventor Holdings*, we acknowledged "that *Alice* was a significant change in the law as applied to the facts of this particular case." 876 F.3d at 1379. "Prior to *Alice*, the state of the law for computer-implemented business transaction inventions was less than clear, given this court's divided [2013] en banc opinion." *Id.* However, as we later explained, post-*Alice*, "a § 101 defense previously lacking in merit may be meritorious after *Alice*. This scenario is most likely to occur with respect to patent claims that involve implementations of economic arrangements using generic computer technology," *Mortg. Grader*, 811 F.3d at 1322, as the claims do here. Comparable to the "anonymous loan shopping" claims at issue in *Mortgage Grader*, the Asserted Claims are directed to such customizable profiles to facilitate patronage implemented using generic computer technology. And these issues were significant, if not determinative, of the Supreme Court's holding in *Alice*.

The majority fears a "chill[ing]" effect that imposing "direct economic sanctions" might have on attorneys. Maj. Op. 10. However, we have expressly stated that "the appetite for licensing revenue cannot overpower a liti-

gant's and *its counsel's* obligation to file cases reasonably based in law and fact and to litigate those cases in good faith." *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1328 (Fed. Cir. 2011) (emphasis added); *see id.* (finding, in the Federal Rule of Civil Procedure 11 context, that "an attorney, in addition to his obligation to his client, also has an obligation to the court and should not blindly follow the client's interests if not supported by law and facts"). I would, therefore, determine that the District Court did not abuse its discretion in holding that the claims lacked a colorable basis.

## II. The District Court Did Not Abuse Its Discretion in Finding Bad Faith

The District Court found AlphaCap and Gutride acted with bad faith throughout litigation, starting when it "opposed Gust's [motion to transfer venue]" and "proceed[ed] with the infringement action." *Gust II,* 226 F. Supp. 3d at 250, 251; *see Gust III*, 2017 WL 2875642, at *6 (awarding fees under § 1927 because "[the] bad-faith filing drove or colored virtually every decision counsel made during the litigation" and led to an unreasonable and vexatious multiplication of the proceedings). The District Court considered multiple instances of bad faith to support its finding. *See Gust II*, 226 F. Supp. 3d at 245–52. As part of its consideration, it first noted the motivation of AlphaCap and Gutride in filing this patent infringement case against Gust along with nine other litigations in the Eastern District with "comparatively paltry settlements with the nine other defendants confirms its unsavory motivation." *Id.* at 245; *see id.* ("AlphaCap's decision to file this case in the Eastern District . . . —a venue that bears no relationship to the parties or facts at issue in this case, as discussed in more detail below—further supports a finding of inappropriate motivation."). The District Court also analyzed Gutride's litigation of frivolous claims on behalf of its client despite the fact that, "[a]s experienced patent counsel, [they] were

well aware of *Alice* and its implications for the [Patents-in-Suit]," *id.* at 248; *see id.* (pointing to a statement made by Gutride, when Gust resisted a walkaway settlement offer, that AlphaCap's claims were "not worth litigating" and offered to dismiss the Eastern District litigation with prejudice, yet filed the same day a motion for venue discovery) Gutride's clear litigation strategy was devised to pursue those claims by "resisting a motion to change venue, twice demand[ing] documents from Gust, and engag[ing] in the prosecution of the [Eastern District litigation]." *Id.*

Under Second Circuit law, bad faith in the § 1927 context means "motivated by improper purposes such as harassment or delay." *Schlaifer Nance & Co. v. Estate of Warhol,* 194 F.3d 323, 336 (2d Cir. 1999). I agree with the District Court that Gutride was motivated by such improper purposes, and I find no misstatement of law or erroneous assessment of fact to disturb this finding of bad faith on appeal. The majority attempts to divide and conquer the District Court's analysis at each of the points above, *see* Maj. Op. 13–19, but the District Court went to pains to document how "[the] bad-faith filing drove or colored virtually every decision counsel made during the litigation," *Gust III*, 2017 WL 2875642, at *8. The law is, in fact, clear that we must holistically consider Gutride's entire course of conduct in order to determine if it acted in bad faith by delaying dismissal of its suit, when it had knowledge of the suit's frivolous nature. *See Int'l Bhd. of Teamsters*, 948 F.2d at 1346. I find no abuse of discretion here where clear evidence supports a finding of bad faith.

The majority incorrectly contends that the District Court relies too heavily on Gutride's statement made during a settlement phone call that this case is "not worth litigating," J.A. 1342, and proffers that it is a common statement in settlement talks, *see* Maj. Op. 14 ("In the context of advocating for settlement with the opposing party to settle, this is an inoffensive assertion that the

calculus favors settlement[.]"). However, the majority cites no Second Circuit case law to support its theory, and I find none, excusing such a clear statement by counsel as common. The majority's attempt to analogize the facts of this case to our precedent in *Q-Pharma, Inc. v. Andrew Jergens Co.*, fares no better. 360 F.3d 1295, 1304 (Fed. Cir. 2004). In *Q-Pharma,* we affirmed a denial of § 285 fees and found no bad faith where "Q-Pharma explains its decision to withdraw its claim of infringement as based on its determination that further pursuit of the lawsuit would not have been worth the investment required to prove infringement." *Id.* Here, the statement by counsel Seth Safier speaks nothing of lost-investment, so we as the reviewing appellate court cannot import such a limitation. Rather, the statement cuts against Gutride's argument given that, unlike appellant's actions in *Q-Pharma,* the majority of Gutride's objectionable conduct occurred *after* Mr. Safier made the above statement in July 2, 2015. Thus, such a statement made so early in litigation indicates that if Mr. Safier believed the "case should settle," then Gutride could have, for example, filed a covenant not to sue much earlier. This demonstrates a bad faith attempt to multiply the proceedings beyond July 2015.

The majority further agrees with Gutride that under "then-current law, the Eastern District was a proper forum." Maj. Op. 17. The District Court's finding of bad faith made clear that Gust lacked any real ties to the Eastern District, yet Gutride brought suit in that forum, and then claimed there were witnesses from which it required evidence. *Gust III*, 2017 WL 2875642, at *6. The District Court found that Gutride directly contradicted this position in its subsequent filing, in which it could not identify a single witness "within 100 miles of [the Eastern District's courthouse in] Marshall, Texas." J.A. 3395; *see Gust III*, 2017 WL 2875642, at *6; J.A. 3408–4406. As the District Court pointed out in *Gust III*, it was

only after months of venue discovery and the production of some "37,000 pages of documents" by Gust that Gutride then learned of the existence of users of Gust's *online* system residing in the Eastern District, 2017 WL 2875642, at *6 n.10, a situation which simply could not justify Gutride's earlier resistance to the Motion to Transfer Venue from the Eastern District. Gutride's vexatious opposition to the motion constituted an attempt to harass Gust into settling as indicated by the suspect timing of its July 2 discovery motion. *See* Maj. Op. 3 (timeline of events).

Indeed, Gust early and formally notified AlphaCap through counsel of its belief in the frivolous and exceptional conditions to which it was being subjected, outlining why the case lacked merit, and demanding attorneys' fees if AlphaCap would not settle. J.A. 59; *cf. Stone Basket Innovations, LLC v. Cook Med. LLC*, 892 F.3d 1175, 1181 (Fed. Cir. 2018) (stating that "provid[ing] early, focused, and supported notice of [a counsel's] belief that it was being subjected to exceptional litigation" aids a court's analysis of a party's unreasonable manner of litigating under a separate attorney fees statutory provision). It was Gutride that instead pursued multiple litigation tactics indicative of unreasonableness. *See* J.A. 58, 2409 (discovery on the Motion to Transfer Venue), 2452, 2729, 2827, 2882 (claim construction briefings). I find nothing but continued bad faith by Gutride and conclude the District Court properly sanctioned Gutride for the unreasonable and vexatious multiplication of the proceedings.

## CONCLUSION

The majority improperly steps out of the appellate role and substitutes its own findings of fact for that of the District Court's. The proper inquiry is whether the District Court based its sanctions on an erroneous assessment of the evidence. It did not make any such errors,

and we must defer to the District Court's discretionary award of § 1927 sanctions by affirming its sanctions under such circumstances. Therefore, I respectfully dissent.